UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*******************************
Robert Mulligan,
                Plaintiff

       vs                                  Civil Action
                                           No.: 06CA10492MLW

Maritrans Operating Co.,
               Defendant
*******************************


## PLAINTIFF'S REQUEST FOR JURY INSTRUCTIONS

### Instruction Number One


       The plaintiff in this action has asserted three separate grounds for recovery from the defendant.  First, the plaintiff claims that the alleged occurrence on board the M/V INTEGRITY was a result of the defendant's negligence, as defined under the Jones Act. Second, the plaintiff claims that the alleged occurrence was a result of the unseaworthiness of the defendant's M/V INTEGRITY, as established under General Maritime Law.  And third, the plaintiff asserts that the defendant has failed in its obligation to provide cure, or medical benefits, to the plaintiff as required under General Maritime Law.  Each of these claims shall be considered separately by you, because the plaintiff is entitled to recover if he establishes any of the three claims. If you find that the defendant violated Coast Guard regulation 46 U.S.C. 35.01-1, regarding inspection to be made prior to alteration repair or other such operations involving riveting, welding, burning, or like fire-producing actions, within or on the boundaries of cargo tanks which have been used to carry flammable or combustible liquid, or chemicals in bulk, or within spaces adjacent to such cargo tanks, or pipelines, heating tiles, pumps, fittings, or other appurtenances connected to such cargo or fuel tanks, and that such statute is a critical safety statute, enacted for the safety of the crew members, such as Mr. Mulligan, and, further, that the violation of such provision contributed, even slightly, to Mulligan's injury, than you must find that the defendant is liable for 100% of the seaman's damages

and any comparative negligence of the seaman is to be disregarded.

Instruction Number Two

The plaintiff in this case has the burden of proving every essential element of his claim by a fair preponderance of the evidence.  However, this rule does not require proof to an absolute certainty, since such proof is seldom possible in any case.  In a civil action such as this, it is proper to find that a party has succeeded in carrying the burden of proof on an issue of fact, if after consideration of all the evidence in the case you believe that what is sought to be proved is more likely true than not true.  Burch v. Reading Co., 240 F.2d 574, 578-579 (3rd Cir. 1957), cert. denied, 353 U.S. 965 (1957).

Instruction Number Three

Now in determining whether any fact in issue has been proved by a preponderance of the evidence so that when considered and compared with the evidence, if any, opposed to it you may consider, unless instructed otherwise, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them, in determining which evidence has more convincing force on the contested issue and produces in your minds a belief that what is sought to be proved is more likely true than not true.  Porter v. American Export Lines, Inc., 387 F.2d 409 (3rd Cir. 1968).

Instruction Number Four

There is no magical formula by which one may evaluate testimony. You bring with you to this courtroom all of the experience and background of your lives. In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you by others. The same tests that you use in your everyday dealings are the tests and factors you may well consider are the interest or lack of interest of any witness or organization in the outcome of this case, the bias or prejudice of a witness or party, if any, the age, the appearance, the manner and ability with which the witness gives testimony on the stand; the opportunity that the witness had to observe the facts concerning which testimony is given and the probability or improbability of the witness' testimony when viewed in light of all of the other evidence. DeVitt and Blackmar, Federal Jury Practice and Instructions (3rd Ed. 1977) Vol. 2, Sec. 72.01.

Instruction Number Five

You may also draw, from facts which you find have been proved, such reasonable inferences, which are deductions or conclusions supported by common sense from the facts, as seem justified in the light of your experience.  Schulz v. Pennsylvania R. Co., 350 U.S. 523, 76 S.Ct. 608 (1956); Tenant v. Peoria & P.U.R. Co., 321 U.S. 29, 64 S.Ct. 409 (1944); Wilkins v. American Export Isbrandtsen Lines, Inc., 446 F.2d 480 (2nd Cir. 1971).

Instruction Number Six

The admissions made by Captain Rick Iullucci, as the designated person most knowledgeable for Maritrans, are binding upon Maritrans. Fed.R.Civ.P. 30(b)(6).

<u>Instruction Number Seven</u>

The means of knowledge are ordinarily the equivalent in law to knowledge.  So, if it appears from the evidence in the case that a person had information which would lead a reasonably prudent person to make inquiry through which he would surely learn certain facts, then that person may be found to have had actual knowledge of those facts, the same as if he had made such inquiry and had actually learned such facts.  That is to say, the law will charge a person with notice and knowledge of whatever he would have learned, upon making such inquiry as it would have been reasonable to expect him to make under the circumstances.  <u>Steere Tank Lines, Inc. v. United States</u>, 330 F.2d 719 (5th Cir. 1963).

## Instruction Number Eight

The rules of evidence ordinarily do not permit witnesses to testify as to opinion or conclusion.  An exception to this rule exists as to those whom we call "expert witnesses," witnesses who by education and experience, have become expert in some art, science, profession, or calling; they state their opinions as to relevant and material matters in which they profess to be expert, and they also state their reasons for the opinions.

<u>Instruction Number Nine</u>

       You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves.  If you should decide that the opinion of the expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.  <u>Salem v. United States Lines Co.</u>, 370 U.S. 31, 82 S.Ct. 1119, 1122 (1962).

<u>Instruction Number Ten</u>

I instruct you that the fact that the defendant failed to produce handwritten notes taken by its investigating officer, Rick Iulliucci, photographs taken by Rick Iulliucci, and its ISM manual in the instant case creates an inference that such materials contained information which is unfavorable to the defendant and you may construe such absence of these materials thusly. <u>Interstate Circuit vs. United States</u>, 1939, 306 U.S. 208, 226, 59 S.Ct. 467, 474.

Instruction Number Eleven

Under the Jones Act, a person who is found to be a seaman has a right to recover damages for personal injuries caused by the negligence of a shipowner.  The worker's accident which resulted in the injury must have occurred in the course and scope of his employment.

<u>Instruction Number Twelve</u>

In order to recover for Jones Act negligence against the defendant shipowner/employer, the plaintiff must prove by a preponderance of the evidence that:

a.  the defendant breached its duty to exercise reasonable care under the circumstances to provide the plaintiff seaman with a reasonably safe place in which to work and to maintain and keep the vessel in a reasonably safe condition, <u>Mahnich v. Southern S.S. Co.</u>, 321 U.S. 96, 64 S.Ct. 455 (1944); and

b.  the breach of that duty by the defendant shipowner/employer played a part, "even the slightest, in producing the injury . . . for which damages are sought."  <u>Rogers v. Missouri Pacific R.Co.</u>, 352 U.S. 400, 77 S.Ct. 443 (1957); <u>Ferguson v. Moore-McCormack Lines, Co.</u>, 355 U.S. 521 77 S.Ct. 457 (1957).

<u>Instruction Number Thirteen</u>

A "safe place to work" in the law means a place where the work can be performed without exposure to unreasonable risk of harm, such as might arise from a hazardous condition, a defective appliance, or some operational negligence.  <u>Mahnich</u>, <u>supra</u>.

Instruction Number Fourteen

In considering whether the operation was negligent, it is not necessary that the plaintiff prove that there was a better or safer method available for this operation than the method used.  All the plaintiff need do in order to prove the existence of a negligent operation is to show that the operation was not reasonably safe under the circumstances. Mahnich, supra.

<u>Instruction Number Fifteen</u>

Often times, there are many causes and conditions which result in the happening of a particular occurrence, such as the plaintiff's alleged occurrence.  Under the Jones Act, if just one of the causes was the defendant's negligence, then plaintiff shall be able to recover.  The defendant's negligence does not have to play a substantial part in the alleged occurrence, for even the slightest part is sufficient for recovery.  <u>Rogers</u>, <u>supra</u>; <u>Ferguson</u>, <u>supra</u>.

It has been said that plaintiff's burden proving that the defendant's conduct caused his injuries is "feather weight."  <u>Davis v. Hill Engineering, Inc.</u>, 549 F.2d 314, 331 (5th Cir.).  Put another way, all that is required is a showing of "slight negligence."  <u>Allen v. Seacoast Products, Inc.</u>, 623 F.2d 355, 361 (5th Cir. 1980).

<u>Instruction Number Sixteen</u>

_____Under the law the defendant's negligence is a legal cause of an injury or damage if that negligence played any part, no matter how small, in bringing about or causing the injury or damage.  Therefore, even if the defendant's negligence operated in combination with the act of another or in combination with some other cause, the defendant's negligence is a legal cause of the plaintiff's injury or damage if it played any part no matter how small in bringing about or causing the injury or damage.

<u>Instruction Number Seventeen</u>

With respect to causation, a party is liable for plaintiff's injury caused by an act, or failure to act, whenever it appears from the evidence in the case that the act or omission played a part in bringing about or actually causing the injury, and that the injury was either a direct result or reasonably probable consequence of the act or omission.  This does not mean that law recognizes only one cause of any injury, consisting of only one factor or thing, or the conduct of only one person.  On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time; either independently or together, to cause injury.  <u>Litherland v. Petroland Offshore Construction Services, Inc.</u>, <u>supra</u>.

Thus, if plaintiff proves by a preponderance of the evidence that defendant's negligence played any part, however small, in bringing about plaintiff's injuries. <u>Ferguson v. Moore McCormack Lines</u>, 352 U.S. 521, 77 S.Ct. 457 (1957).

<u>                              Instruction Number Eighteen</u>

The defendant has argued that there were superceding causes which exonerate it from liability. However, you may not find that there was a superceding, exonerating cause of the plaintiff's injuries if you find any of the following to be true:

a.      the defendant, at the time of the negligent conduct, should have realized that a third person might so act, or;

b.      a reasonable man, knowing the situation existing when the act of the third person was done, could not regard it as highly extraordinary if the third person so acted, or;

c.      the intervening act was a normal consequence of the situation created by the defendant's conduct, and the manner in which it was done was not extraordinarily negligent.  <u>Donaghey vs. Ocean Drilling & Exploration Co.,</u> 974 F.2d 646, 652(5th Cir. 1982);

d.      The intervening cause acted independently of, and occurred after, the conclusion of the defendant's negligent conduct. <u>Napier v. F/V Dessie, Inc.</u>, 454 F.3d. 61, 68 (1ˢᵗ Cir. 2006).

<u>Instruction Number Nineteen</u>

Since a corporation can act only through its officers, or employees, or other agents, the burden is on the plaintiff to establish, by a preponderance of the evidence in the case, that the negligence of one or more officers, employees, or other agents of the defendant, other than the plaintiff, was a proximate cause of any injuries and consequent damages sustained by the plaintiff.

Any negligent act or omission of an officer, employee, or other agent of a corporation, in the performance of his duties is held in law to be the negligence of the corporation. <u>Gleason v. Seaboard Airline R.Co.</u>, 278 U.S. 49, S.Ct. 161 (1921).

<u>Instruction Number Twenty</u>

Therefore, if you find that any member of the crew of the M/V INTEGRITY, was, in any respect, negligent, than that negligence is attributable to the vessel.

Instruction Number Twenty-One

If you find that the defendant violated any safety statute or regulation with respect to the ignition of the fire, and the manner of firefighting operations undertaken thereafter, and that the following elements also exist:

1.   The plaintiff was a member of a class of intended beneficiaries of the statute of regulations;

2.   The plaintiff sustained injury of a type against which the statute of regulations were designed to protect;

3.   The unexcused nature of the violation;

4.   Causation of injury,

then, the plaintiff has established liability. FELA, 45 U.S.C. Sec. 53.

### Instruction Number Twenty-Two

Under U.S. Coast Guard regulation 46 U.S.C. 35.01, no alterations, repairs, or other such operations involving riveting, welding, burning, or like fire-producing actions, should be undertaken until an inspection was made to determine that the operation could be undertaken with safety. Under this regulation, the master of the vessel, in this case, Captain Grueland, had an obligation to undertake such inspection prior to the commencement of the work, and was obligated, thereafter, to make a proper entry in the vessel's log book of such inspection.

———

<u>Instruction Number Twenty-Three</u>

If you find that the defendant violated Coast Guard regulation 46 U.S.C. 35.01-1, regarding inspection to be made prior to alteration repair or other such operations involving riveting, welding, burning, or like fire-producing actions, within or on the boundaries of cargo tanks which have been used to carry flammable or combustible liquid, or chemicals in bulk, or within spaces adjacent to such cargo tanks, or pipelines, heating tiles, pumps, fittings, or other appurtenances connected to such cargo or fuel tanks, and that such statute is a critical safety statute, enacted for the safety of the crew members, such as Mr. Mulligan, and, further, that the violation of such provision contributed, even slightly, to Mulligan's injury, than you must find that the defendant is liable for 100% of the seaman's damages and any comparative negligence of the seaman is to be disregarded. <u>Fuzyk vs. Rowell King Fisheries Inc.</u>, 98 F. 3d. 14, 1997 AMC 92(9th Cir. 1996).

## Instruction Number Twenty-Four

The plaintiff has established liability against the defendant in this case, if you find that the defendant violated a Coast Guard regulation in that

(a) the plaintiff was a member of the class intended to benefit from the statute of regulation;

(b) the injury sustained by the plaintiff is of a type against which such regulation was designed to protect;

(c) the un-excused nature of the violation; and

(d) the causation of injury.

<u>Kernan; Reyes v. Vantag S. S. Co.</u> 609 F.2d 140 (5th Cir. 1980).

<u>Instruction Number Twenty-five</u>

If you find that the defendant breached, or failed to adhere to the mandates of U.S. Coast Guard regulation 46, Sec. 35.01-1, with respect to the grinding work done on deck, that regulatory violation or some causal connection to the injuries sustained by the plaintiff, then the defendant assumes the burden of proving that its breach of said statutory violation could not have caused the plaintiff's damages. <u>Poulis-Minott,</u> 388 F. 3d. 354,364(1st Cir. 2004).

<u>Instruction Number Twenty-Six</u>

If you find that the defendant violated STCW, provisions regarding the work loads of the members of the crew of the Integrity, and that such violation contributed to the occurrence of the fire, and its aftermath, then the defendant is liable for any injury caused by such safety statute violation. <u>Kerman; Reyes vs. Vantage S.S. Co.</u>, 609 F.2nd 140(5th Cir. 1980)

<u>Instruction Number Twenty-Seven</u>

If you find that the defendant routinely allowed its crew members to voluntarily work hours in excess of that allowed by STCW, then such violation constitutes negligence per se, and you may not impose comparative negligence on the plaintiff. <u>Elms vs. Crowley Marine Service, Inc. 1997</u> AMC335 W.D. Wa. (1996)

_____

### Instruction Number Twenty-Eight

Under FELA, 45 USC section 53, a vessel owner's breach of an applicable safety statute enacted for the safety of employees which even slightly contributes to the seaman's injuries is liable for one-hundred percent of the seaman's damages and any comparative negligence of the seaman is to be disregarded. <u>Fuzyk vs. Rowell King Fisheries, Inc.</u> 98 F.3d14, 1997 AMC 92 (9th Cir. 1996)

Instruction Number Twenty-Nine

If you find that the defendant violated a safety regulation promulgated by the Coast Guard, there is a rebuttable presumption that such violation caused the plaintiff's injuries.  See <u>Kernan</u>, <u>supra</u>.

## Instruction Number Thirty

While failure to comply with customs and practices in the industry does not, in itself, establish lack of due care, you may consider such evidence as some evidence of negligence. T. J. Hooper 60 F. 2nd 737 (2nd Cir. 1932)

———

Instruction Number Thirty-One

If you find that the defendant required crew members to work excessive duty or overtime, such may be construed by you as evidence of negligence. <u>Elms vs. Crowley Marine Service, Inc. 1997</u> AMC835 (W. D. Wa. 1996)

Instruction Number Thirty-Two

Under 45 U.S. Code Section 53, a vessel owner's breach of an applicable safety statute enacted "for the safety of employees" which even slightly contributes to a seaman's injury is liable for one hundred percent of the seaman's damages, and any comparative negligence of the seaman is to be disregarded.  Fuszek v. Royal King Fisheries, Inc., 98 F. 3rd 514 (9th Cir. 1996).

Instruction Number Thirty-Three

As such, if you find that the regulation established by the Coast Guard, 46 U.S.C. 35.01-1, "Inspection and testing required when making alterations, repairs, or other such operations involving riveting, welding, burning, or like fire-producing actions, was (a) designed to protect against injuries to individuals such as the plaintiff; (b) the injuries sustained by the plaintiff herein were of the type against the regulation was designed to protect; (c) the un-excused nature of the violation: and (d) that the violation caused the plaintiff injuries, then the plaintiff has established liability against the defendant and, further, you may not find any contributory or comparative fault on the part of the plaintiff. See <u>Kernan</u>, <u>supra</u>.

Instruction Number Thirty-Four

The United States Coast Guard requires of its regulated vessels to report marine casualties to include the following:

"An injury that requires professional medical treatment (treatment beyond first aid) and, if the person is engaged or employed on board a vessel in commercial service, that renders the individual unfit to perform his or her routine duties; 46 C.F.R. 4.05 1(a)(6); and/or an occurrence materially and adversely affecting the vessel's seaworthiness or fitness for service or route, including, but not limited to fire, flooding, or failure of or damage to fixed fire extinguishing systems, life saving equipment, auxiliary power generating equipment, or bilge pumping systems;" 46 C.F.R. 4.05 1(a)(4).

<u>Instruction Number Thirty-Five</u>

The owner, agent, master, operator, or person in charge, shall, within five days, file a written report of any marine casualty required to be reported under 4.05-1.  This written report is in addition to the immediate notice required by 4.05-1.  This written report must be delivered to a Coast Guard Sector Office or Marine Inspection Office.  It must be provided on Form CG-2692 (Report of Marine Accident, Injury or Death), supplemented as necessary by appended Forms CG-2692A (Barge Addendum) and CG-2692B (Report of Required Chemical Drug and Alcohol Testing following a serious marine incident).

If filed without delay, after the occurrence of the marine casualty, the report required by Paragraph (a) of this section suffices as the notice required by 4.01-1(a)(b).

Instruction Number Thirty-Six

Under 46 C.F.R. 4.05-1(a), an owner, agent, master, or person in charge of a vessel, involved in a marine casualty must give notice as soon as possible to the nearest Coast Guard Safety and Marine Inspection office. If the casualty involved either a grounding, which creates a hazard to the safety of the vessel, navigational environment, or an occurrence materially affecting the vessel's seaworthiness or fitness for service; or death or serious injury, or damage to property greater than $25,000.00. 46 4.05-1(a)

Instruction Number Thirty-Seven

33 C.F.R. 164.53 requires that the owner, master, agent, or person in charge of any vessel of 1,600 or more gross tons, notify the captain of the port of the United States Coast Guard of any "hazardous condition" aboard the vessel within the jurisdiction of the port, including: loss of main propulsion; fire; flooding; cargo spills(oil or chemical); loss of generator power; loss of steering; movement within the port in a dead ship status; structural failures of a hull."

Instruction Number Thirty-Eight

46 C.F.R. Section 4.05-15 requires the vessel's owners, agents, and masters to preserve logs and other records that may be of assistance in determining the cause of a marine casualty and make such records available to the Coast Guard on his request. Correspondingly, if you find that the defendant's investigating officer, Rick Iulucci, took photographs of the scene of the accident, and prepared handwritten notes regarding his findings, and that those records may be of assistance to the Coast Guard in determining the cause of a marine casualty, then the defendant had a duty, under this statute, to preserve those records.

<u>Instruction Number Thirty-Nine</u>

The purpose of Coast Guard casualty reporting requirement is to allow the Coast Guard to investigate the cause of a casualty; to ascertain whether misconduct, incompetence, negligence, unskillfulness, or willful violation of law contributed to that cause; and to determine whether new laws or regulations are needed to prevent reoccurrence of the casualty.  46 U.S.C. Sec. 6301.

<u>Instruction Number Forty</u>

Coast Guard accident reports are required to enable the Coast Guard to conduct investigations, which are made for the purposes of taking appropriate measures to promote safety of life and property at sea.  <u>Clark v. Icicle Seafood, Inc</u>. 2000 U.S.Dist. Lexis 85723 Dist. Wash., citing 36 C.F.R. Sec. 4 07-1(d).

<u>Instruction Number Forty-One</u>

Stated another way, the reporting requirements with respect to marine casualty imposed upon a vessel exist so that the Coast Guard may immediately initiate an investigation to determine:

1.      The cause of the accident;

2.      Whether there is evidence that any failure of material(either physical or design) was involved or contributed to the casualty, so that proper recommendations for the prevention of the recurrence of similar casualties may be made;

3.      Whether there is evidence of any act of misconduct, inattention to duty, negligence, or willful violation of the law on the part of any license or certificated person contributed to the casualty, so that appropriate proceedings against the licenses or certificates of such person may be recommended and taken under 46 U.S.C. 6301;

4.      Whether the accident should be further investigated by the marine board of investigation in accordance with regulations and subpart 4.09.

46C.F.R. 4.07.1.

Instruction Number Forty-Two

A shipowner may be held liable for failing to provide a seaman with the proper and adequate medical treatment.  De Zon v. American President Lines, Ltd., 318 U.S. 660, 1943 A.M.C. 483 (1943).

Instruction Number Forty-Three

If you find that the defendant acted negligently with respect to providing the plaintiff with reasonable and appropriate care following the accident then the defendant is legally liable for all damages stemming therefrom.

Instruction Number Forty-Four

The defendant may be held liable for failing to provide a seaman with proper and adequate medical attention.  Thus, if you find that the defendant failed to provide the plaintiff with timely and proper cure, in the form of approval of medical services, you may award all damages sustained by the plaintiff as result of such failure.  <u>Cortes v. Baltimore Insular Line, Inc.</u>, 287 U.S. 367, 53 S.Ct. 173 (1932).

_____

Instruction Number Forty-Five

In the plaintiff's second claim, the plaintiff seeks to recover damages from the defendant on the theory that the defendant's M/V INTEGRITY was unseaworthy.  The law concerning unseaworthiness is separate and different from the law concerning Jones Act negligence.  Liability for an unseaworthy condition does not in any way depend upon negligence, or fault, or blame.  That is to say, the shipowner or vessel owner is liable for all injuries and consequent damage which was directly or substantially caused, in whole or in part, by an unseaworthy condition existing at any time, even though the owner may have exercised due care under the circumstances, and may have had no notice or knowledge of the unseaworthy condition which cause, in whole or in part, the injury or damage.  Peymann v. Perini Corporation, 507 F.2d 1318 (1st Cir. 1974), cert. denied 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780; Litherland v. Petroland Offshore Construction Services, Inc., 546 F.2d 129, 132 (5th Cir. 1977).

Instruction Number Forty-Six

In considering the evidence and testimony presented to you, it shall be kept in mind that the law recognizes that persons who earn their livelihood at sea, such as fishermen and seamen, are "subject to the rigorous discipline of the sea, and all the conditions of his service constrain him to accept, without critical examination and without protest, working conditions and appliances as commanded by his superior officer."  As a result of these conditions, the law has "generated the exacting requirement that the vessel or the owner must provide the seaman with a seaworthy vessel and appurtenances with which to do his work, (and) likewise require that a safe vessel and/or appurtenances be furnished at the time the work is to be done."  Mahnich v. Southern S.S. Co., 321 U.S. 96, 103-104, 64 S.Ct. 455, 459 (1944).

Instruction Number Forty-Seven

The law places an absolute duty upon the defendant shipowner to provide the crew members with a seaworthy vessel.  The owner may not delegate that duty to anyone. If he does not provide a seaworthy vessel, then no amount of care or prudence excuses him whether he knew or could have known of the deficiency.  Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872 (1946).

_____

<u>Instruction Number Forty-Eight</u>

A seaworthy vessel is a ship whose hull, gear and equipment are reasonably adequate in the design and state of repair and maintenance to perform their intended functions in the operation of the ship, and that crew members will have a reasonably safe place to work and not be subjected to unreasonable risk of harm by reason of failure or deficiency in the ship, its hull, its gear and its equipment, including, of course, such things as deck tiles and secure, leak-free hydraulic hoses, adequate number of crewmen, and a hull and work area free from defects.  <u>Mitchell v. Trawler Racer, Inc.</u>, 362 U.S. 539, 80 S.Ct. 926 (1960).

Instruction Number Forty-Nine

In order for a vessel to be found unseaworthy, the unsafe or defective condition need not be of the type as to render the entire vessel unfit for the purposes for which she was intended, that is that she would sink if she attempted to float.  All that the plaintiff must prove is that the part of the ship involved was not reasonably fit for its intended purpose, or that some condition of the vessel prevented it from being unreasonably fit for its intended purpose, and that his injury was a proximate result of the unseaworthiness. Mitchell, supra.

_____

Instruction Number Fifty

With respect to causation in an unseaworthiness claim, an injury or damage is considered caused by unseaworthiness of a vessel whenever it appears from a preponderance of the evidence in the case that the unseaworthiness of the vessel caused in whole or in part the injury; that is, that the unseaworthiness played a substantial part in bringing about or actually causing the injury; and/or that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.  Usner v. Luckenback Overseas Corporation, 400 U.S. 494, 91 S.Ct. 514 (1971).

———

Instruction Number Fifty-One

"Unseaworthiness is a **condition**.  (Emphasis in the original.)  How that condition came into being - whether by negligence or otherwise - is quite irrelevant to the owner's liability for personal injuries resulting from it."  Usner v. Luckenback Overseas Corp., 400 U.S. 494, 498, 91 S.Ct. 514 (1971).

Instruction Number Fifty-Two

The owner's duty to furnish a seaworthy ship is absolute and completely dependent of his duty under the Jones Act to exercise reasonable care; it applies equally to a condition arising after the vessel leaves her home port as before, or to one which may be only temporary.  Van Carpals v. The S.S. American Harvester, 297 F.2d. 9 (1961), *citing* Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d. 941.

Instruction Number Fifty-Three

How or when the condition originates is irrelevant as to the unseaworthiness of the vessel.  Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d. 941.

—————

Instruction Number Fifty-Four

Any improper or unreasonably dangerous method of operation may amount to unseaworthiness, so long as it is not an isolated act of negligence.  Morales v. City of Galveston, 370 U.S.165, 1962 A.M.C. 1450 (1962).

<u>Instruction Number Fifty-Five</u>

A negligent order may render the vessel unseaworthy.  <u>Drachenberg v. Canal</u> <u>Barge Co.</u>, 571 F.2d 912 (5th Cir. 1978).

Instruction Number Fifty-Six

_____A "grinding work schedule" which results in the fatigue of the master and/or crew of a vessel may render a vessel unseaworthy. In re Armatur, 710 F.Supp.390, 1990(Dist. P.R.1998) 1988).

_____

<u>Instruction Number Fifty-Seven</u>

If the conduct of one crewman makes unsafe, otherwise proper equipment, creating an unsafe condition, the vessel becomes unseaworthy and the owner is liable for injuries caused by that condition to another crew member. <u>Mitchell vs. Trawler Racer Inc.</u>, 362 U.S. 539(1960).  Thus, if you find that Chief Engineer Cary, by closing the valve on the foam monitors, rendered that equipment unsafe, you may conclude that this rendered the vessel unseaworthy.

Instruction Number Fifty-Eight

The condition of an improperly trained crew can constitute an unseaworthy condition. Petition of New England Fish Co. 465 F.Supp. 1003(W.D. Nash 1979). Hogg v. Yorkman 434 F.Supp. 715 (D. Md. 1977).

<u>Instruction Number Fifty-Nine</u>

     The defense of contributory negligence requires evidence of some negligent act or omission by plaintiff other than his knowledgeable acceptance of a dangerous condition. <u>McCoy v. The United States</u>, 689 F.2 1196, 4th Cir. (1982).

### Instruction Number Sixty

If you find that the plaintiff, at the time of the injury, was involved in an activity which had as its objective, among other things, to preserve human life, then you may only find contributory negligence, on the part of the plaintiff, should you determine that he acted in a wanton or reckless manner.  <u>Furka v. Lakes Dredge & Dock, Co., Inc.</u> 755 F.2d 1085, 1087 (4th Cir. 1984).  This is because "when confronted with an emergency, a rescuer should not be charged with consequences of errors of judgment resulting from the excitement of the confusion of the moment."  <u>Corbin v. Philadelphia</u>, 195 Pa. 461, 45 A. 1070, 1074 (1900).

_____

Instruction Number Sixty-One

Maintenance and Cure must be paid regardless of fault or contributory negligence of the seaman.  Warren v. United States, 340 U.S. 523 (1951).

Instruction Number Sixty-Two

A vessel owner is obligated to furnish a seaman with Maintenance and Cure benefits with respect to an injury or illness that occurs or manifests itself while the seaman is in the service of the vessel.  The origin or cause of the disability, the fact that it preexisted the voyage, originated on another vessel, or even was due to the fault of another vessel are all irrelevant.  Meade v. Skip Fisheries, Inc., 385 F. Supp. 725 (D. Mass. 1974).

Instruction Number Sixty-Three

Under the "last ship rule," the defendant is solely liable for all maintenance and cure due the plaintiff, so long as plaintiff's illness or injury manifested itself within any time that the plaintiff was in the service of the M/V INTEGRITY.  Meade, supra at 728.

Instruction Number Sixty-Four

The remedy of cure is designed to be a broad and inclusive duty, free of uncertainty, complexity, and administrative burdens.  Hence, doubts as to entitlement, defenses and necessity of medical treatment and of attainment of maximum cure are to be resolved by the employer in favor of the seaman.  <u>Vella v. Ford Motor Co.</u>, 421 U.S. 1 (1975).  Defendant herein had, and has, a duty to promptly investigate any claim for cure, and, resolving doubts as to entitlement in favor of the seaman, promptly pay amounts due. <u>Vaughn v. Atkinson</u>, 369 U.S. 527.

<u>Instruction Number Sixty-Five</u>

Cure is defined as the reasonable medical expenses for treatment until the seaman is fit for duty or until maximum cure is reached.

Instruction Number Sixty-Six

Under the doctrine of Cure, a vessel owner, such as the defendant in this case, has a duty to guarantee payment to medical providers, for reasonable medical services prospectively to be rendered.  Sullivan v. Tropical Tuna, Inc., 963 F. Supp. 42 (D. Mass. 1997).

Instruction Number Sixty-Seven

Negligence of the seaman is no defense to a seaman's claim for maintenance and cure, even if his own negligence was the sole cause of his injuries. <u>Warren vs. United States</u> 340 U.S. 523 (1951)

Instruction Number Sixty-Eight

If you find, at the time of his trial, that the plaintiff has not reached "maximum cure," you may award such amounts as may be needful in the immediate future for the maintenance and cure of a kind and for a period which is ascertainable.  <u>Calmar S. S. Corp. v. Taylor</u>, 303 U.S. 525.

Instruction Number Sixty-Nine

Absent willful misconduct on the part of the seaman (examples of which include gross inebriation, alcoholism, fighting, attempted suicide, venereal disease, etc.), and/or willful concealment of a disabling condition at the time of inception of the employment relationship, the seaman is entitled to maintenance and cure for injuries sustained or manifested while he is in the service of the vessel.

<u>Instruction Number Seventy</u>

If you render a verdict for the plaintiff on his claim for negligence under the Jones Act and/or his claim for unseaworthiness under the General Maritime Law, you will then be concerned with the law I am about to discuss with you relating to damages.  If you find the defendant liable in this case, you should assess as damages the amount you find justified by a preponderance of the evidence as full and just compensation for all of the plaintiff's damages, no more and no less.

Damages are not allowed as a punishment against the party and cannot be imposed or increased to penalize the defendant.  Neither can damages be based on speculation for it is only actual damages - what the law calls compensatory damages - that are recoverable.  On the other hand, compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury, tangible and intangible.  They are an attempt to restore the plaintiff, that is, to make him whole or as he was immediately prior to his injury.

Instruction Number Seventy-One

In considering the amount of damages which the plaintiff may have sustained, you may consider the following items which are a proper subject for which the plaintiff might be compensated:  (1) physical pain and suffering including physical disability, impairment and inconvenience, in the effect of plaintiff's injuries upon the normal pursuits and pleasures of life; (2) mental anguish and anxiety including humiliation, shame and embarrassment, worry and concern, and feelings of economic insecurity caused by disability; (3) income loss in the past; (4) impairment of earning capacity or ability in the future, including impairment of normal progress in the plaintiff's earning capacity; (5) past and future medical expenses incurred and to be incurred by the plaintiff as a result of his injuries.

———

Instruction Number Seventy-Two

No evidence of the value of such intangible things as mental or physical pain or suffering has been nor need be introduced; for; in that respect, it is not value you are trying to determine, but an amount that will fairly compensate the plaintiff for the damages he has suffered.

———

## Instruction Number Seventy-Three

Under the General Maritime Law, it is said that the defendant "takes the plaintiff as he finds him," including any pre-existing weakness or susceptibility to injury, including a weakness caused by a previous injury or pre-existing condition.  <u>Maurer v. United States</u>, 668 F.2d 98.

Instruction Number Seventy-Four

You may award to the plaintiff, any damages you deem proven with respect to any aggravation of his illness or injury, sustained in his service of the vessel, caused by the employer's failure to promptly and voluntarily pay cure.  <u>Vaughn v. Atkinson</u>, 369 U.S. 527.

<u>Instruction Number Seventy-Five</u>

When considering what the Plaintiff must show in order to be awarded full, fair and reasonable damages, recovery will not be barred because there may be an element of uncertainty in his proof of aspects of certain of the damages. Under the law, much can and must be left to your judgment as jurors, sometimes upon relatively meager evidence, when such evidence is all that is available. It is sufficient, however, if the extent of the damages is shown by a just and reasonable inference even if the result is approximate. A wrongdoer is not entitled to complaint that the damages for which it alone is responsible cannot be measured with precision. Parties should not profit by or engage in financial speculation on their own wrongs. <u>Carlo Bianchi & Company v. Builders Equipment & Supplies Company</u>, 347 Mass. 636 (1964); <u>White v. Universal Underwriters Insurance Company</u>, 347 Mass. 367, 382 (1964); <u>Story Parchment Company v. Paterson Parchment Paper Company</u>, 282 U.S. 555 (1931).

Instruction Number Seventy-Six

In regard to the calculation of future loss of earnings, the law requires you to make reasonable adjustments to the lump sum payment of anticipated future loss so as to take into account the amount of interest or return which the plaintiff would reasonably be expected to receive on a relatively safe investment by an unsophisticated investor of the lump sum payment over the period of time which the future loss is reasonably certain to be sustained.  The underlying principle behind this requirement is a lump sum amount paid today, calculated by a simple multiplication of years of expected future loss times earnings power, covering a loss to be suffered in the future represents an advance payment or income that is more valuable if it is received today than it would be if it were to be received at some time in the future.  Masculli v. United States, 411 F.2d 867, on demand, 343 F.Supp. 439, reversed, 483 F.2d 81 (3rd Cir. 1969).

Discounting a lump sum to a reasonable present value "necessarily includes a prediction about inflation (the prediction made by those who determine the interest rate), and it is neither reasonable nor fair to use that prediction only to reduce an award instead of endeavoring to determine an award that approximates the present value of what future wages would have been . . .  (Economics) should be used to achieve a realistic estimate of future conditions, so that an injured plaintiff can be compensated for his loss as fairly and completely as possible."  Doca v. Marina Merchants Nicaraguense, S.A., 634 F.2d 30, 38 (2nd Cir. 1980).

In order, however, for the plaintiff to receive full compensation for his prospective loss you shall also make reasonable adjustments to the lump sum payment for anticipated return loss so as to take into account the recent historical decline of purchasing power, brought on by the vagaries of inflation.  Jones & Laughlin Steel Corp. v. Pfeifer, U.S. 103 S.Ct. 2541 51 L.W., 4795 (June 15, 1983).

<u>Instruction Number Seventy-Seven</u>

You may consider the fact that the discount rate and the inflation rate will co-vary significantly with each other over time, so as to result in a "total offset."  This "total offset method" "accommodates the realty of inflation and bids fealty to the concept of reducing future earnings to present worth."  <u>Pfeifer v. Jones v. Laughlin Steel Corp.</u>, 678 F.2d., 453, 461.

### Instruction Number Seventy-Eight

In addition to the claim for personal injuries, plaintiff also has a claim for cure. The law imposes upon a seaman's employer the duty to pay the expenses of maintenance and cure of a seaman who falls ill or is injured in the service of him employer's vessel, provided his illness or injury is not caused by his own willful misbehavior or misconduct. The right to maintenance and cure does not depend upon negligence of the employer or unseaworthiness of the vessel, and a seaman establishes his right to maintenance and cure when he shows that he was injured or became ill in the service of the vessel.

Instruction Number Seventy-Nine

      The obligation to pay maintenance does not extend for life or even for any indefinite period of time.  The employer must pay maintenance only until the seaman is cured, or until it has been medically determined that his sickness or injury is of a permanent character and that he had reached his maximum medical recovery.  At the time his doctor declares that he has reached a point of recovery beyond which he will not improve in view of present medical knowledge upon his particular illness or injury, his right to maintenance and cure ends even though he may not be completely cured, and even though he may still need medical treatment to keep him from getting worse.

Instruction Number Eighty

Under the plaintiff's claim for negligence (Count I) or unseaworthiness (Count II), you may award as part of his damages the reasonable cost of both past and future medical care and attention, which with reasonable certainty have been or will be necessitated by his injuries.  Barthomomew v. Universe Tankships, Inc., 279 F.2d 911 (2nd Cir. 1960); Fitzgerald v. United States Lines Company, 374 U.S. 16, 19, 83 S.Ct. 1646, 1649 (1963).

.

Instruction Number Eighty-One

The final element of possible damages that may be awarded upon a finding for the plaintiff here is called pre-judgment interest.  Such an award is within your sole discretion as the triers of fact in this case.  <u>Robinson v. Pocahontas, Inc.</u>, 477 F.2d 1048 (1st Cir. 1973); <u>Parisi v. Lady in Blue, Inc.</u>, 433 F.Supp. 681 (D.Ma 1977).

Instruction Number Eighty-Two

Very simply, the purpose of pre-judgment interest is to make the plaintiff fully whole or compensated.  Here, as you know, the incident involving the plaintiff occurred on or about February 23, 2005.  If you should find for the plaintiff, you may decide that the plaintiff has not had the benefit of the money you award and so has not been able to earn interest upon it since the date of the wrong.  You may correct that situation if you desire.

Instruction Number Eighty-Three


If you award pre-judgment interest, you may compute it from the date of the plaintiff's injury.  <u>Choest v. A. & P. Boat Rentals</u>, 321 F.Supp. 1290 (E.D. La. 1971).

Instruction Number Eighty-Four

A seaman, such as Mr. Mulligan, may recover compensatory damages such as pain and suffering, stemming from the ship owner's unreasonable failure to pay maintenance and cure. In other words, the failure to pay maintenance and cure gives rise to money damages for any prolongation or aggravation of the physical injuries suffered by the seaman. Williams vs. Kingston Shipping Co., 925 F.2d, 721, 723 (4th Cir. 1991); Sullivan vs. Tropical Tuna Inc. 963 F. Supp.42 (1st Cir. 1997).

Instruction Number Eighty-Five

The rate of interest you may apply may range up to but not exceed the maximum legal rate of 12 percent (12%).  <u>City of New York v. Ferry Boat Tompkins</u>, 332 F.2d 1000 (2nd Cir. 1964).

Instruction Number Eighty-Six

Whether to award interest on the claim of the Plaintiff is in your discretion. However your discretion must be exercised with a view to a right to interest unless the circumstances are exceptional such as fault or bad faith on the part of the Plaintiff. Aklenon Naviera, S.A. v. M/V. Marina L., 633 F.2d 789 (9th Cir. 1980).

<u>Instruction Number Eighty-Seven</u>

Defendant has alleged that the plaintiff's departure from his muster station was intervening unforeseeable cause, which broke the chain of causation, and relieves the defendant of liability. However, you may not find that Mulligan's departure from his muster station was an intervening unforeseeable cause, if any of the following is true:

a.    that it was reasonably foreseeable, at the time of the negligent acts committed by the defendant, that Mulligan would leave his muster station and attend the fire scene;

b.    Mulligan's act, in leaving the muster station, occurred while the defendant's negligence was ongoing and continuing.

<u>Appier v. F/V Desie, Inc</u>. 454 F.3d. 61,68, (1st Cir. 2006).

<u>Instruction Number Eighty-Eight</u>

A seaman may recover compensatory damages for any pain and suffering stemming from the ship owner's unreasonable failure to pay maintenance and cure. <u>Sullivan v. Tropical Tuna</u>, 963 F.Supp. 42, citing <u>O'Connell v. Inter Ocean Management Corp.</u> 90 F.3d. 82, 84(3rd Cir. 1996).

Instruction Number Eighty-Nine

Thus, should you find that the defendant unreasonably delayed in its payment for medical services to be rendered to the plaintiff, you may award compensatory damages to the plaintiff for prolonged pain and suffering, caused by the defendant's conduct. Sullivan v. Tropical Tuna, 963 F.Supp. 42, citing O'Connell v. Inter Ocean Management Corp. 90 F.3d. 82, 84(3rd Cir. 1996).

Instruction Number Ninety

If you find that the defendant was aware that it had an obligation to report the fire on board The Integrity and/or the injuries sustained by the plaintiff to the United States Coast Guard, but failed to so report same, you may consider that fact as same evidence of the defendant's liability. Olofson v. Kilagallon, 362 Mass 803, 806, 891 N.E.2d 600 (Mass 1973).

Plaintiff,

By his attorney,


/s/ Brian S. McCormick, Esq.
BRIAN S. MCCORMICK, ESQ.
BBO #550533
Orlando & Associates
One Western Avenue
Gloucester, MA 01930
(978) 283-8100


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies those indicated as non registered participants on November 7, 2008.

/s/ Brian S. McCormick
BRIAN S. MCCORMICK, ESQ.