UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ROBERT MULLIGAN,                    )
                                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Civil Action No. 06-10492-LTS
                                    )
MARITRANS OPERATING CO.,            )
                                    )
            Defendant.              )
_____)


ORDER ON REQUEST FOR PUNITIVE DAMAGES
AND ATTORNEY'S FEES

May 12, 2010

SOROKIN, M.J.

On February 23, 2005, Robert Mulligan sustained injuries while fighting a fire aboard the *M/V Integrity*. From June 8 to June 19, 2009, this Court presided over the trial of this matter. At the suggestion of counsel, the parties reserved for post-trial decision by the Court the issue of whether defendant acted in a callous, willful, or recalcitrant manner with respect to the payment of Cure. The jury returned a verdict in favor of Mulligan on Counts I (Negligence) and III (Cure). On June 23, 2009, the Court entered judgment against defendant on Counts I and III. On August 13, 2009, the Court denied defendant's motions to alter/amend the judgment and for judgment as a matter of law. Defendant subsequently filed a Notice of Appeal. The Court of Appeals stayed appellate proceedings "until the district court finally resolves the matters which plaintiff claims are still pending before the district court." Docket # 134-2. On October 28, 2009,

the Court issued an Order indicating that it entered judgment before considering the reserved issue, and instructed the parties to brief the issue fully by February 7, 2010.

BACKGROUND

The pertinent evidence can be summarized as follows.  At trial, Mulligan testified that he injured both of his shoulders in the course of fighting the fire and handling the fire hose.  According to Mulligan, although he reported to Captain Grueland that both shoulders were injured, Capt. Grueland only noted an injury to Mulligan's right shoulder.  When Mulligan pointed out the form's inaccuracy, Capt. Grueland reportedly told Mulligan that he would not change the report, but that Mulligan could describe any additional symptoms to the Emergency Room staff.

On the following day, February 24, 2005, Mulligan presented at Taylor Hospital in Ridley, Pennsylvania.  The Emergency Nursing Record indicated that Mulligan's chief complaint was "Injured L Shoulder/wrist."  The attending physician's clinical impression indicated, "Contusion - R L shoulder wrist Sprain."  The Emergency Room Physician Orders note that Mulligan complained of injuries to his "left shoulder, right shoulder and right wrist."  In addition, Mulligan brought with him the Requisition and Report of Medical Attention form ("Form"), half of which had been filled out by Capt. Grueland.  The second half of the Form was to be filled out by an attending physician.  In addition to Capt. Grueland's note that Mulligan had injured his right shoulder, the attending physician added a note to the Form indicating that Mulligan's left shoulder had also been injured.

On March 7, 2005, Mulligan was evaluated by an orthopedic surgeon, Dr. Arthur Bowman, in Weymouth, Massachusetts.  Dr. Bowman's notes indicate that Mulligan reported that he was "trying to put out a fire and injured both of his shoulders and right wrist."  Dr. Bowman

noted that Mulligan's "left shoulder doesn't seem to bother him that much." Therefore, Dr. Bowman determined that the focus would be on the right shoulder for the time being. Mulligan had surgery on his right shoulder (with the approval of defendant) on June 1, 2005.

On June 9, 2005, Mulligan saw Dr. Bowman for a follow-up appointment. Dr. Bowman noted that, "the left shoulder is beginning to bother [Mulligan], but I am going to wait a little while before deciding whether or not we need to scope the left shoulder." Dr. Bowman further noted that Mulligan was following an at-home exercise program. On June 30, 2005, Dr. Bowman referred Mulligan to physical therapy for his right shoulder, noting that Mulligan was "not quite ready to return to work at this point."

On July 7, 2005, Mulligan began physical therapy at South Shore Sports Therapy in Weymouth, Massachusetts. The intake notes indicate that, "[s]ubjectively, [Mulligan complains of] R shoulder achiness, soreness, occasional." No mention of an injury to Mulligan's left shoulder was made. On the "Joint Measurement Chart," the therapist noted that a manual muscle test of Mulligan's left shoulder resulted in a score of five out of five. Mulligan continued physical therapy for his right shoulder for the next several months.

On November 1, 2005, Mulligan was evaluated at South Shore Occupational Rehabilitation Testing, Inc. to determine his readiness to return to work. While pain in his right shoulder was noted several times, no special mention was made of Mulligan's left shoulder. On November 16, 2005, during work hardening therapy, Mulligan reported "sharp pain" in his left shoulder. Based on that report, Dr. Bowman ceased physical therapy on November 22, 2005. Dr. Bowman wrote that Mulligan had "resolution of his right shoulder problem. Now he has a left shoulder problem, which I believe to be tendonitis on the basis of history and the clinical

examination."

On December 13, 2005, Mulligan reported to Dr. Bowman that he still had pain in both shoulders. Dr. Bowman determined that a magnetic resonance examination ("MRI") of the left shoulder should be the next step. On January 6, 2006, Mulligan, through counsel, contacted defendant to request approval of the MRI. At that point, defendant retained counsel to evaluate Mulligan's request for further medical treatment. On January 26, 2006, defense counsel sent a letter to Mulligan's counsel requesting that Mulligan submit to an Independent Medical Exam (IME) before Dr. John Stafford Ritter in Brighton, Massachusetts. On February 1, 2006, counsel for Mulligan responded to defense counsel's request for an IME. Mulligan's counsel indicated that while he did not agree that an IME was a matter of right for an admiralty defendant, Mulligan would nevertheless submit to the IME, with the stipulation that such exam would constitute the defendant's medical examination pursuant to Fed. R. Civ. P. 35, in the event of ensuing litigation. Having received no response by February 9, 2006, counsel for Mulligan sent another letter to defense counsel, noting that "[t]he treating orthopedic has made it very clear that he is unable to progress with respect to resolution of Mulligan's physical problems without [the MRI of the left shoulder]." On February 10, 2006, counsel conferred by telephone. Defense counsel rejected Mulligan's position. On February 21, 2006, counsel for Mulligan submitted a settlement demand letter, the terms of which were rejected by defendant. Mulligan filed the instant litigation on March 17, 2006.

On May 24, 2006, Mulligan filed an emergency motion for an order instructing defendant to pay him maintenance and cure. Maritrans opposed the motion, contending that: (1) it had not received executed medical authorizations from Mulligan; and (2) there was a question as to

whether Mulligan sustained his left shoulder injury on the vessel. The Court (Chief Judge Wolf) ordered Mulligan to provide defendant with executed authorization forms, and set a further hearing for June 23, 2006. On June 21, 2006, Defendant agreed to pay for the left shoulder MRI.

On July 18, 2006, following the MRI, Mulligan met with Dr. Bowman, who noted that "[t]he MRI would suggest that [Mulligan] has a small, full thickness tear of the left rotator cuff." Dr. Bowman further wrote that Mulligan "is not interested in surgery at this time. He has excellent function with full lateral elevation, forward flexion, internal and external rotation. No tenderness over the AC joint. Slight tenderness over the supraspinatus tendon near its insertion. Would like to avoid surgery." Dr. Bowman injected Mulligan with cortisone, and the two agreed that Mulligan would try physical therapy before proceeding with any invasive procedures.

On August 1, 2006, Mulligan's counsel sent a copy of Dr. Bowman's July 18 note to defense counsel, and asked Defendant to approve the proposed physical therapy. After MARITRANS refused to pay, Mulligan filed a second motion for an order instructing Defendant to pay maintenance and cure. Defendant opposed the motion, once again questioning whether Mulligan's left shoulder had been injured while he was in the service of the ship, and noting that palliative treatment such as pain management is not considered to be Cure under maritime law. On September 8, 2006, Chief Judge Wolf denied Mulligan's motion, noting that the issue could not be resolved as a matter of law, as factual issues (as to whether Defendant was reasonable vis-a-vis its Cure obligations) remained.

On September 14, 2006, defense counsel wrote to Mulligan's counsel to set up an IME with Dr. Ritter. Mulligan was evaluated by Dr. Ritter on September 21, 2006. Dr. Ritter wrote that

5

> [i]t appears [that Mulligan's] current left shoulder complaints are related to an incident on 02/23/05, as there are no other medical records available, nor any other history of a left shoulder injury, for which he sought medical care. With this, one presumes his left shoulder rotator cuff may be related to the incident at work when putting out a fire, lifting a fire hose over his head with both arms, and as per his history, had the complaint of bilateral shoulder pain.

Dr. Ritter's report was sent to Mulligan's counsel on October 18, 2006. On October 26, 2006, Mulligan's counsel wrote to defense counsel again requesting approval for physical therapy. On November 15, 2006, Defendant approved physical therapy. However, in the meantime, Mulligan had been evaluated by Dr. Bowman again, on October 24, 2006. By that point, Dr. Bowman believed that Mulligan's condition had deteriorated to the point that surgery was now the only treatment option. Dr. Bowman referred Mulligan to his partner, Dr. Owen McConville, for surgical evaluation.

On December 7, 2006, Mulligan's counsel wrote to defense counsel and attached a copy of Dr. Bowman's note of October 24, 2006. Mulligan's counsel requested that Defendant approve an initial evaluation with Dr. McConville.[1] On December 14, 2006, defense counsel responded, stating that defendant could not evaluate the need for surgery because it did not have the latest notes from Dr. Bowman's office.[2] On February 14, 2007, defendant approved the surgical evaluation by Dr. McConville. On the following day, counsel for Mulligan faxed the approval letter to Dr. McConville's office. However, the evaluation was not immediately

---

[1] Meanwhile, on November 29, 2006, Defendant was sold to OSG Ship Management, Inc.

[2] Notably, defendant did have authorization to obtain all of Mulligan's relevant medical records from Dr. Bowman.

6

scheduled.[3] On March 21, 2007, over one month after defendant had approved an evaluation, defense counsel wrote to Mulligan's counsel and advised him that "[a] decision must be made as to what treatment and/or procedure Mr. Mulligan intends to schedule, and, when. If he is not going to have corrective surgery of the left shoulder, then it is our position that he is not entitled to further maintenance and cure."[4] An evaluation was finally scheduled for March 27, 2007.

On March 27, 2007, Dr. McConville recommended an arthroscopy of the left shoulder. On April 2, 2007, defense counsel acknowledged receipt of a communication from Dr. McConville's office. One week later, counsel for Mulligan wrote to defense counsel seeking authorization for the surgery. In response, defense counsel indicated that defendant wanted to wait until after the April 27, 2007 depositions of two witnesses, Michael Cary and Joseph Schwartstein, before committing to a position as to the surgery. According to defense counsel, the depositions would reveal that there were genuine questions as to whether Mulligan had truly been injured while fighting the fire on board the vessel.

On May 2, 2007, after the depositions had been taken, Mulligan's counsel wrote to defense counsel, stating that neither deponent had contradicted Mulligan's testimony that he had been at the scene of the fire. Counsel also reiterated his position that whatever defendant's view with regard to whether Mulligan inappropriately interjected himself into the fire, Mulligan's

---

[3]According to Mulligan, it was clear that Dr. Bowman's and McConville's office had become frustrated with Defendant and/or its counsel.

[4]When a seaman's "condition has stabilized and further progress ended short of a full recovery, the seaman . . . is no longer entitled to maintenance and cure." In re RJF Int'l Corp. for Exoneration from or Limitation of Liab., 354 F.3d 104, 106 (1st Cir. 2004). This stabilization is known as "maximum medical recovery." Id. at 107, citing Vaughan v. Atkinson, 369 U.S. 527, 531 (1962).

injuries would still be covered under the doctrine of Maintenance and Cure.  On May 14, 2007, on May 24, 2007, on July 25, 2007, and again on September 19, 2007, Mulligan's counsel wrote letters to defense counsel, seeking defendant's position with respect to the left shoulder surgery.  On October 4, 2007, defense counsel responded to the most recent letter and requested recent medical records.  Counsel for Mulligan replied that there were no records after Dr. McConville's evaluation on March 27, 2007.

On November 26, 2007, defense counsel advised counsel for Mulligan that defendant had authorized the left shoulder surgery.  On January 23, 2008, defense counsel faxed a Surgery Authorization and Fee Negotiation to Dr. McConville's office.  On February 5, 2008, Mulligan underwent surgery.

## DISCUSSION

An award of maintenance and cure does not automatically entitle a plaintiff seaman to an award of attorney's fees and punitive damages.  See Trupiano v. Captain Gus & Bros., Inc., 1994 WL 702324, at *1  (1st Cir. Dec. 15, 2004) ("[W]e cannot say that the district court clearly erred in finding that defendant's failure to make timely payments of maintenance and cure, though eventually adjudged to be without adequate legal basis, did not justify the imposition of punitive damages and/or attorneys' fees.").  To receive an award of punitive damages and/or attorney's fees, Mulligan bears the burden of proving that defendant was "callous, willful, or recalcitrant" in withholding maintenance and cure payments. Robinson v. Pocahontas, Inc., 477 F.2d 1048, 1051 (1st Cir. 1973).

The Court finds that after defendant received Dr. Bowman's reports of pain in Mulligan's left shoulder in late 2005, defendant was not initially "callous, willful, or recalcitrant" in

questioning the cause of Mulligan's injury.  In the nine months since the onboard incident (with the exception of his presenting notes to the hospital in Pennsylvania on the day after the incident, and in his first meeting with Dr. Bowman on March 7, 2005),  Mulligan had not complained of left shoulder pain.  In addition, his left shoulder tested as a five out of a possible five in July of 2005.  Mulligan has not pointed to any mention of pain in his left shoulder until it resurfaces at his work hardening therapy on November 16, 2005, after it was reported that his right shoulder had vastly improved.

Given the length of time since the incident onboard, and the absolute dearth of evidence in Mulligan's medical records indicating that he had experienced consistent problems with his left shoulder, defendant can hardly be labeled as "callous" for seeking further information as to why Mulligan experienced sharp pain in his left shoulder during the work hardening therapy. Defendant also had questions as to whether Mulligan was at the scene of the fire, and/or whether he had disobeyed orders, rendering him ineligible for Cure.  After defendant received the appropriate medical authorizations, it approved the left shoulder MRI on June 21, 2006 (albeit with a hearing date looming).

After the MRI, defendant continued to question Mulligan's purported left shoulder injury, for the same reasons stated above. After Mulligan agreed to submit to an IME conducted by defendant's choice, Dr. Ritter, defendant was informed by Dr. Ritter that it appeared that Mulligan's left shoulder injuries were a result of the onboard incident.  On November 15, 2006, defendant approved physical therapy for Mulligan's left shoulder.  However, in the meantime, Dr. Bowman had concluded that physical therapy was no longer an option, and that surgery was the best route for treatment.  When faced with the request for approval of a surgical consult,

defendant requested further medical records.  There is no evidence that defendant acted in a callous manner, especially given the change in suggested treatment.

After defendant approved a surgical evaluation, however, no appointment was scheduled for one and one-half months.[5]  Having heard nothing from Mulligan in the interim, defense counsel, on March 21, 2007, wrote to Mulligan's counsel, advising him that some decision regarding Mulligan's course of treatment would have to be made.  Shortly thereafter, Dr. McConville recommended the arthroscopy.

Although defense counsel had earlier indicated that approval for the surgery might be forthcoming, in April of 2007, defense counsel informed Mulligan's counsel that the request for surgery would be considered only after the depositions of Cary and Schwartstein.  The Court finds that the defendant's desire to hear from those witnesses, particularly in light of the six-week delay from February to March of 2007, does not reflect callous or recalcitrant behavior on defendant's part.

However, as of May 2, 2007, after Cary and Schwartstein were deposed, defendant became unresponsive to Mulligan's counsel's communications.  Counsel for Mulligan stated his position that neither deponent had contradicted Mulligan's testimony, and counsel thereafter repeatedly requested approval for the left shoulder surgery from defense counsel.  It was not until November 26, 2007 – after Mulligan's counsel sent numerous letters – that defense counsel indicated that Mulligan was authorized for the left shoulder surgery.  Defendant offers no explanation for the lapse in time between May of 2007 and November 26, 2007, nor does it offer any evidence that it

---

[5]Despite Mulligan's speculation that the delay in scheduling the appointment was due to doctors' office's frustration with defendant, the Court cannot make such a finding based on the record.

had a valid counter-argument to Mulligan's counsel's conclusions regarding the depositions.

Defendant cites no authority for its argument that because it eventually paid for Mulligan's left shoulder surgery, there can be no punitive damages. The Supreme Court instructs that "[b]ecause punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding, such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law." Atlantic Sounding Co. v. Townsend, 129 S.Ct. 2561, 2575 (2009). The Court finds that, in the context of the facts of this case, and given defendant's unexplained refusal to pay for the surgery and failure to respond to counsel's requests from May until November of 2007, this is an appropriate case.

CONCLUSION

Given the complete lack of explanation, the court finds that defendant acted in an obstructionist manner, and that Mulligan is entitled to punitive damages and attorney's fees, limited to the time period from May 2, 2007 (when defendant ceased to offer reasons for its concern regarding the left shoulder injury) to November 26, 2007 (when defendant authorized the surgery). The Supreme Court has indicated that one method of calculating punitive damages is to award one times the amount of compensatory damages. See Exxon Shipping Co. v. Baker, 128 S.Ct. 2605, 2634 (2008). Accordingly, Mulligan shall, within ten (10) days from the date of this Order, file a statement: (1) proposing the amount of punitive damages corresponding to the relevant time period, with justification; and (2) itemizing the amount of attorney's fees expended during the relevant time period. Defendant shall have ten (10) days to respond. Each party's submission shall be limited to five (5) pages.[6]

                                                  SO ORDERED.

                                                   /s / Leo T. Sorokin
                                              UNITED STATES MAGISTRATE JUDGE

---

[6] The Court rejects defendant's argument that a request for punitive damages and/or attorney's fees is time-barred. The Court reserved the issue for determination after trial by agreement of all parties. See Trial Transcript, Day 7, at 121. While plaintiff should have pressed the issue post-trial, nonetheless, the Court inadvertently entered judgment prior to deciding the issue.